William E. FARRALL, et al., Plaintiffs,

v.

A.C. & S. CO., INC., et al., Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 21, 1989.
Decided: Jan. 10, 1990.

Thomas C. Crumplar, of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

Robert B. Anderson, of McCarter & English, Wilmington, for defendant Celotex Corp.

## CONSOLIDATED OPINION

TAYLOR, Judge.

Following jury verdict judgment was entered in favor of each plaintiff in amounts which reflected the jury awards adjusted to reflected amounts which plaintiffs received in settlement with other asbestos manufacturers and suppliers. The total damages awarded to plaintiffs was $2,550,000. After reductions for amounts received by plaintiffs from settlements with others who may have contributed to plaintiffs' asbes-

tos-related diseases, judgments were entered in the total amount of $627,250.

Plaintiffs and defendant Celotex Corporation [Celotex] have moved to alter or amend the judgments and briefs have been submitted. The objective is to determine the amount of Celotex's liability to plaintiffs by applying reductions mandated by 10 *Del.C.* Ch. 63 with respect to tortfeasors which have been released by plaintiffs.

The factual setting against which the issues must be considered is that plaintiffs asserted claims based on asbestos-related diseases against many manufacturers and suppliers of asbestos containing products. Plaintiffs dismissed or released all defendants except Celotex. Jury verdict interrogatories established the amount of each plaintiff's damages and the percentage of fault of various released tortfeasors and of defendant Celotex.

### I

Historically, a plaintiff who was injured by the tortious conduct of more than one tortfeasor could sue one or all of the tortfeasors and could recover his damages totally from one or more of the tortfeasors. If he released any of the tortfeasors, all were released. The tortfeasor who paid more than his share of the damages could not obtain contribution from other tortfeasors for payment beyond his share.

The Delaware Uniform Contribution Among Tort-feasors Law, 10 *Del.C.* Ch. 63 [Law], abolished the harsh common law rules in that area and substituted new methods governing recovery by an injured party and liability of tortfeasors.

Methods of determining the liability of non-released tortfeasors are set forth in 10 *Del.C.* § 6304.

Subsection (a) provides a simple reduction of the award to plaintiff by the amount paid for the release of a tortfeasor. If more than one tortfeasor is released, the reduction under that subsection is the total amount paid by all released tortfeasors.[1]

---

1. 10 *Del.C.* § 6304(a) states:

A release by the injured person of one tortfeasor, whether before or after judgment,

Subsection (b) provides another method of reduction which is applicable if the effect of the release is to protect the released tortfeasor from contribution claims of non-released tortfeasors.[2]

It has been noted above that one of the objectives of Chapter 63 is to permit contribution among tortfeasors. *Raughley v. Delaware Coach Co.*, Del.Super., 91 A.2d 245 (1952). Section 6304(b) provides a mechanism whereby a released tortfeasor can be protected against contribution claims by non-released tortfeasors. Where a plaintiff has released a tortfeasor for an amount less than its pro rata share the non-released tortfeasor is protected against having to bear the portion of the released tortfeasor's share which plaintiff failed to collect in the settlement. It preserves the non-released tortfeasor's right to recover contribution from a settling tortfeasor unless plaintiff agrees to reduce his recovery against the non-released tortfeasor by that portion. To this end, § 6304(b) requires, as a condition for eliminating the released tortfeasor's liability for contribution, that the risk that the pro rata share of recovery attributable to the released tortfeasor is greater than the settlement amount must be assumed by the plaintiff by agreeing to reduce his recovery against the non-released tortfeasor in the amount of the released tortfeasor's pro rata share.

■ The next consideration is the relationship between the reduction mandated by subsection (a) and the reduction under subsection (b) where the release document invokes the reduction under that subsection. The answer is not found in the statutory language. Clearly, the statute, which was intended to apply equitable considerations in the relationships of injured parties and tortfeasors, could not have intended

double reduction. The proper application is to compare the amount received by the injured party from released tortfeasors (subsection (a)) with the pro rata share of the released tortfeasors (subsection (b)). The greater of those amounts satisfies each subsection and is the method accepted by the Court. The liability of the non-released tortfeasors is calculated by subtracting the greater amount determined in the preceding sentence from the amount of the award to plaintiff.

## II

The parties are in disagreement as to the applicability of subsection (b) to releases which plaintiffs delivered to certain tortfeasors.

Plaintiffs executed two different types of releases. One type was provided to the settling defendants who were manufacturers of asbestos products and a different type was provided to defendant Delaware Insulation Company. Because of the fundamental difference in wording, these will be discussed separately.

## A.

■ The release which plaintiffs executed and provided to released tortfeasors other than Delaware Insulation provides:

> In the event the Releasee is adjudicated to be a Joint Tortfeasor, then the payment herein shall constitute a reduction to the extent of the pro rata share of liability of Releasee found liable, from the damage recoverable by us from the other tortfeasors. Specifically, this release is intended to comply with 10 Del.C. Section 6304(b) so as to preclude liability of the Releasees to any other Tortfeasor, if any, for contribution and any language

does not discharge the other tort-feasor unless the release so provides; but reduces the claim against the other tort-feasor in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

**2.** 10 *Del.C.* § 6304(b) states:

A release by the injured person of one tort-feasor does not relieve him from liability to make contribution to another tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for reduction, to the extent of the pro rata share of the released tort-feasor, on the injured person's damages recoverable against all other tort-feasors.

inconsistent with the intent of 10 Del.C. Section 6304(b) shall be void.

The quoted language departs from the language of 10 *Del.C.* § 6304(b) in that the statutory language requires that the damages reduction must be "to the extent of the pro rata share of the released tort-feasor," while the release language provides that "the payment herein shall constitute a reduction to the extent of the pro rata share of liability of Releasee found liable." The difference is that the release limits the releasee's "pro rata share" to the "payment herein", while the statute contains no such ceiling.

The last sentence of the quoted release language declares "this release is intended to comply with 10 Del.C. Section 6304(b) so as to preclude liability of the Releasees to any other Tortfeasor, if any, for contribution and any language inconsistent with the intent of 10 *Del.C.* § 6304(b) shall be void." It has been noted above that one of the two functions of § 6304(b) is to specify the manner in which the settling tortfeasor can escape liability for contribution. Since the non-settling tortfeasors are not parties to the settlement, the only way in which the settling tortfeasor can be relieved of liability for contribution is to comply with the specifications in § 6304(b). Applying the language of the release which declares any language that is inconsistent with § 6304(b) void, I find the ceiling that is provided in the release limiting the pro rata share to the amount paid in the settlement is void and not effective.

### B.

■ Plaintiffs provided Delaware Insulation with a different release from that used with the manufacturers. The Delaware Insulation release contains the following language:

> This release is given under 10 *Del.C.* § 6304(b) and is to be a joint tortfeasor release pursuant to said section. The release is per capita, i.e., only for the amount of consideration stated in paragraph one and is not to be considered a pro-rata release.

Plaintiffs argue that the second sentence quoted above limits the releasee's contribution protection to the amount paid to plaintiff by the releasee. Plaintiffs apparently attach some cryptic meaning to the phrase "release is per capita". I do not find that phrase used in the statute, nor has any authority been cited for the meaning which plaintiffs attach to it.

The language in this release differs substantially from that which was given to other released tortfeasors, which has been discussed above. The Delaware Insulation release does state "This release is given under 10 *Del.C.* § 6304(b) and is to be a joint tortfeasor release pursuant to said section." In view of this language the consideration is what kind of release has effect under § 6304(b).

It has been noted above that § 6304(b) has two objectives, namely, to declare that the released tortfeasor who receives a release from the injured party is not released from contribution to non-released tortfeasors unless certain requirements are met, and to specify the requirements for being released from contribution. The first objective of § 6304(b) is accomplished by operation of the section and does not call for a provision in a release in order to make it effective. On the other hand, in order to escape contribution liability there must be some language in the release which activates relief from contribution. I conclude that the reference to § 6304(b) has no useful purpose unless it is treated as activating relief from contribution within the framework of § 6304(b). I find that a reasonable interpretation of the language "given under § 6304(b)" is that the release incorporates the release requirements of § 6304(b).

The Court notes that the sentence following the sentence just discussed reads "The release is per capita, i.e., only for the amount of consideration stated in paragraph one and is not to be considered a pro-rata release." While the Court recognizes that the document should be considered as a whole and reconciled if possible, *Raughley v. Delaware Coach Co.*, Del. Super., 91 A.2d 245 (1952), the stated intent

that the release "is given under 10 Del.C. Section 6304(b)" cannot be reconciled with the language quoted above. The ambiguity must be resolved against plaintiffs as the drafting party. *B.S.F. Co. v. Philadelphia Nat. Bank*, Del.Supr., 204 A.2d 746 (1964); *Goodman v. Continental Cas. Co.*, Del.Super., 347 A.2d 662 (1975). Therefore, the Delaware Insulation release will be construed to incorporate the reduction in plaintiffs' recovery required to invoke § 6304(b). The contrary language will be disregarded.

### III

■ The next issue is whether Celotex is entitled to a reduction of damages in the amount paid by settling joint tortfeasors which were not defendants in this suit and against which Celotex did not pursue a crossclaim. Celotex relies on *Clark v. Brooks*, Del.Super., 377 A.2d 365, 374 (1977), *aff'd. sub nom.*, *Blackshear v. Clark*, Del.Supr., 391 A.2d 747 (1978); *Restatement (Second) of Torts* § 885(3); and *Balick v. Philadelphia Dairy Products*, Del.Super., 162 A. 776 (1932) in support of the reduction.

*Clark v. Brooks, supra,* involved the effect of a settlement before suit. The decision centered upon the fact that the settling party was the employer of the defendant in the subsequent suit and the question was whether the employer-employee relationship brought the case within 10 *Del.C.* § 6304. This Court, without discussing the fact that the settlement occurred before suit, held that plaintiff could seek recovery "for additional damages which plaintiff may have suffered in excess of the amount received in the settlement ..." *Id.* at 372. On appeal, the Supreme Court stated "We are not concerned in this appeal with the way in which any such reduction may be accomplished." *Blackshear v. Clark, supra* at 748.

Turning to the wording of the statute, 10 *Del.C.* § 6304 makes no reference to suit or judicial determination. It refers only to "the other tort-feasors", or modifications of that phrase.

Subsection (a) provides an absolute reduction of the claim against the other tortfeasors in the amount paid by the releasee. Therefore, no judicial determination or joinder of the releasee is required as a prerequisite for applying § 6304(a).

Subsection (b), which deals with contribution, refers to "the extent of pro rata share of the released tort-feasor", but it does not specify the mechanics for establishing the pro rata share. Clearly, some determination of the pro rata share is needed before the amount of the ultimate reduction by which the plaintiff's claim is to be reduced.

Plaintiffs argue that Celotex was bound to follow 10 *Del.C.* § 6306(b) if it desired the reductions provided in § 6304. Section 6306(b) provides:

(b) A pleader may either (1) state as a cross-claim against a coparty any claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in action against the cross-claimant; or (2) move for judgment for contribution against any other joint judgment debtor, where in a single action a judgment has been entered against joint tort-feasors one of whom has discharged the judgment by payment or has paid more than his pro rata share thereof. If relief can be obtained as provided in this subsection no independent action shall be maintained to enforce the claim for contribution.

This provision is permissive and deals with a variety of situations. The last sentence of that paragraph defines the mandatory aspect of the paragraph, namely, if relief can be obtained under the permissive alternatives, "no independent action shall be maintained to enforce the claim for contribution." What is sought here is not contribution from a joint tortfeasor but a *reduction of plaintiffs' claims.* That is provided under § 6304(a) and is not required to be accomplished through the procedures described in § 6306(b). In view of the precise language of the statute, I do not find that decisions from other jurisdictions which have adopted a later version of the Uniform Contribution Among Tortfeasors Act, 12 *Uniform Laws Annotated* 59, or

*Restatement (Second) of Torts* §§ 885 & 886, which contain different language from the Delaware Act, are useful in applying the Delaware Act. Nor is *Nobriga v. Raybestos–Manhattan, Inc.*, 67 Haw. 157, 683 P.2d 389 (1984) helpful because it involved a version of the Uniform Contribution Among Tortfeasors Act which was promulgated after adoption of the Delaware law and contained different language from 10 *Del.C.* § 6304(b).

In summary, the amount paid to each plaintiff by released tortfeasors as consideration for obtaining the release should be applied in making the calculation required by subsection (a).

## IV

■ The next issue relates to those plaintiffs who claimed to be suffering from more than one asbestos-related disease but were found by the jury to be suffering from only one disease. The question is whether the full amount that plaintiff received from the settling tortfeasors or a smaller amount based on the single disease should be applied in making the reduction required under § 6304(a). This issue centers on the unusual rule of law which has developed in dealing with asbestos claims that identifies separate asbestos-related diseases and treats each disease independently for filing claims and for awarding damages. *Sheppard v. A.C. & S. Co.*, Del. Super. 498 A.2d 1126 (1985), *aff'd. sub nom., Keene Corp. v. Sheppard*, Del.Supr., 503 A.2d 192 (1986) (*Per Curiam*).

The release which each plaintiff delivered to each defendant (except Delaware Insulation) releases all claims resulting from exposure to asbestos except any form of cancer including mesothelioma. It does not undertake to designate the diseases which are released nor does it undertake to allocate the payment among such diseases. The jury found that plaintiffs Charles Watts, Alton Coney and Edward Kline had asbestos-related pleural disease but did not have asbestosis. Plaintiffs contend that the Court should undertake to allocate a portion of the sum received to each disease and apply only the portion that is applicable to the disease which the jury found plain-

tiff suffered. Plaintiffs suggest applying a ratio based on the jury verdicts awarded to plaintiffs who suffered from two diseases. While this would be based on some statistical experience, it involves an uncertainty and clearly does not reflect the intent of the settling parties. Where, as here, a party has commingled the recovery instead of separately listing the allocation, I conclude that the Court should not speculate on what the parties might have done, but that the amount to be applied against the award is the amount which plaintiff received from the settling party.

In *Whalen v. On–Deck, Inc.*, Del.Super., C.A. No. 80C–JN–112, O'Hara, J. (August 15, 1984), this Court was asked to make a similar allocation involving a lump sum settlement involving husband and wife. Even though the plaintiff and ex-wife, who had a consortium claim, had divided the settlement between themselves, the Court declined to adopt the allocation and applied the full settlement amount against the jury's award to the plaintiff.

In this case plaintiff had the alternative of making an allocation as part of the settlement, but did not do so. Celotex had no part in the transaction. After the results are in, I find no support for judicially rearranging the settlement.

## V

### Issues Raised by Parties' New Calculations

■ Plaintiffs' calculations as to each plaintiff multiply the award by the Celotex percentage of fault and compare that amount with the total amount paid by all released tortfeasors. The lower of those amounts becomes the Celotex liability.

Celotex's calculations as to each plaintiff apply the comparison test (comparing subsection (a) and subsection (b) of § 6304) separately for each released tortfeasor found to be at fault, then totals the greater comparison figure for all those released tortfeasors and then adds the amount paid by tortfeasors who were not found to be at fault. Under that method the greater figure as to some released tortfeasors is the

amount paid while as to others it is the amount based on fault.

I do not accept either party's method of calculation as correctly applying the statute.

The correct method of calculation as to each plaintiff involves two steps. First, determine the amount under subsection (a) by totalling the amount paid by all released tortfeasors.

Second, determine the amount under subsection (b) by totalling the share (percentage) of all released tortfeasors as determined by the verdict and multiplying that percentage against the damage award to that plaintiff. The greater of the above amounts is subtracted from the damage award to give the amount of the liability of the remaining tortfeasor defendants to that plaintiff.

The objective of 10 *Del.C.* § 6304 is to provide a method by which the amount which the litigating tortfeasor must pay to plaintiff is reduced. This reduction is either (a) the amount which plaintiff has received from released tortfeasors or (b) the pro rata share of the released tortfeasors.

The calculation under subsection (a) needs no explanation. The calculation under subsection (b) follows the following language of that subsection:

> a reduction, to the extent of the pro rata share of the released tortfeasor, of the person's damages recoverable against the other tortfeasor.[3]

The Court's method of calculation applies the quoted language. The objective is to determine the amount which the non-released tortfeasor should pay out of the damages awarded to the plaintiff.

The statute does not address the method to be used in applying the quoted language.

Where more than one tortfeasor has been released the method of reduction should be that which best accomplishes the objectives of the statute but does no more than that. The non-released tortfeasors are not concerned with the amount the individual released tortfeasor has paid for the release or the share attributable to the individual released tortfeasor. The non-released tortfeasors' liability does not involve the allocation of payments among released tortfeasors nor the portion of fault attributable to the individual released tortfeasors. Making the comparison of the subsection (a) and subsection (b) reduction separately for individual released tortfeasors might have a place if a right of contribution was available, but by its terms subsection (b) applies only where a released tortfeasor is released from contribution, and hence the non-settling tortfeasors can have no claim against any released tortfeasors. Insofar as the non-released tortfeasor defendants are concerned, the released tortfeasors stand as a class whose collective payments or share determine the amount by which the award to plaintiff against the non-settling tortfeasors is reduced as a single reduction. The payment versus fault comparison must be confined to the aggregate for all released tortfeasors.

Celotex's attempt to obtain a separate reduction for the amounts paid by released tortfeasors who have not been found to have a percentage of fault is a further application of the individual released tortfeasor approach which the Court has found by those tortfeasors are a part of the subsection (a) total which is then compared with the subsection (b) total. The fact that defendant has failed to assert or proved a share of fault for certain released tortfeasors does not accord special treatment

---

3. Delaware adopted the 1939 version of the *Uniform Contribution Among Tortfeasors Act.* Section 4 of the 1939 Uniform Act, which was the same as 10 *Del.C.* § 304, was rewritten in the 1955 Revision of the Uniform Act to replace subsection (b) with the following:
   (b) It discharges the tortfeasor to whom [the release] is given from all liability for contribution to any other tortfeasor.

12 *Uniform Laws Annotated* 98. However, Delaware has not made that revision. The revision was made because it was felt that the language of the Uniform Act which appears in 10 *Del.C.* § 6304(b) discouraged settlements and caused more cases to go to trial. *Id.*

or benefit for amounts paid by those re-leased tortfeasors.

Attached are calculations using figures supplied by the attorneys.

## CALCULATIONS APPLYING THIS DECISION

Plaintiffs    Verdict $875,000

10 Del. C. § 6304(a):

10 Del. C. § 6304(b)

Pro Rata Share of Released Tortfeasors:

| | |
|---|---|
| Combustion Eng. | 2% |
| Delaware Ins. | 4% |
| Eagle Picher | 10% |
| Fibreboard | 4% |
| Owens Corn. Fib. | 8% |
| Owens–Ill. | 3% |
| Pitts. Corn. | 3% |
| Cent Cl Res. | 29% |
| Total Share | 63% |

Total Paid by Released Tortfeasors $261,184.93

Verdict Amount $875,000 × .63 = $551,250

Greater Reduction $551,250

| | |
|---|---|
| Verdict | $875,000 |
| Reduction | $551,250 |
| Celotex Liability | $323,750 |