**MONTGOMERY COUNTY, MARYLAND, Plaintiff,**

v.

**JAFFE, RAITT, HEUER & WEISS, P.C., et al., Defendants.**

**Civ. No. PJM 92–1068.**

United States District Court, D. Maryland.

Aug. 25, 1995.

---

Robert B. Duncan, Steven P. Hollman, Hogan & Hartson, Washington, DC, for plaintiff.

G. Stewart Webb, Jr., Geoffrey Garinther, John A. McCauley, Mitchell Mirviss, Venable, Baetjer & Howard, Baltimore, MD, for defendants.

## OPINION

MESSITTE, District Judge.

Montgomery County, Maryland, has sued a Michigan law firm and one of its members for professional malpractice in connection with alleged misstatements contained in an opinion letter the firm wrote to the County in connection with a construction project in Bethesda, Maryland. The opinion letter was rendered to the County on behalf of a client of the law firm, the limited partnership comprising the development team for the project. When the County proceeded with the project with what it terms "disastrous results," it brought suit against the limited partnership and its guarantors in the Circuit Court for Montgomery County. In time, the County filed a separate suit against the law firm, alleging malpractice arising from a duty the County claimed it was owed by virtue of the opinion letter.

In mid–1992 the County concluded a settlement agreement with one of the limited partnership's guarantors, but continued its suit against the law firm. Eventually the County also settled its dispute with the law firm, save for two issues the parties now ask the Court to decide. The two issues are these:

a) Is the County entitled to maintain the malpractice claim asserted in Count I of its Complaint and, if so, is a contribution credit available with respect to that claim?

b) May the law firm obtain a pro rata contribution credit against a judgment for the County without having joined as parties in this case alleged joint tortfeasors who have previously settled with the County pursuant to a separate settlement agreement?

The parties have presented their arguments by way of Cross–Motions for Summary Judgment. Having read and considered the Motions, the Court will grant the law firm's motion and deny that of the County. The Court thus holds that:

a) The County is entitled to maintain the malpractice claim asserted in Count I of the Complaint, but a pro rata contribution credit is available with respect to that claim.

b) The law firm may obtain a pro rata contribution credit against the judgment for the County without having joined as parties in the case alleged joint tortfeasors who previously settled with the County pursuant to a separate settlement agreement.

## II.

In early 1987, Montgomery County entered into an agreement with CAM Partners Limited Partnership (CAM) to design and build an underground parking garage and related above-ground structures in Bethesda. The development project was known as the Bethesda Metro Development Project. Two entities, Amurcon Corporation (Amurcon) and Caldwell American Investments Inc. (CAI) agreed to act as corporate guarantors, William F. Caldwell agreed to serve as individual guarantor. On July 10, 1987, the Detroit, Michigan law firm of Jaffe, Snider, Raitt and Heuer, P.C. (Jaffe Raitt)[1], on behalf of CAM, sent an opinion letter to the County in support of the development agreement.

The project experienced problems from the beginning. In September, 1988, Jaffe Raitt, on behalf of Amurcon and others, sued CAI and Caldwell in Michigan state court, for dissolution of CAM and for other emergency relief. In its suit papers, Jaffe Raitt alleged that CAI and Caldwell had engaged in "negligent, illegal and fraudulent acts" in-

---

1. The firm subsequently changed its name to    Jaffe, Raitt, Heuer and Weiss, P.C.

cluding, inter alia, violations of the partnership agreement, misapplication of funds, fraudulent bookkeeping entries, falsified reports to partners, and breaches of fiduciary duties. The suit further alleged that CAM was in danger of being declared in default under its development agreement with Montgomery County by reason of insufficient funds to complete the project. In fact, shortly thereafter, the project architect on the Bethesda Metro project suspended performance of its services by reason of nonpayment of its fees by CAM and the County declared CAM in default. On December 14, 1988, the County terminated its agreement with CAM.

Within a year Montgomery County initiated a law suit against CAM and its corporate and individual guarantors in the Circuit Court for Montgomery County. During the course of that proceeding, the County discovered what it believed was the basis for a separate claim against Jaffe Raitt, deriving from the opinion letter of July 10, 1987, and in March, 1992, commenced a second suit against the law firm, also in Montgomery County Circuit Court.[2] Within a few months, the County concluded a settlement agreement with Amurcon, one of the corporate guarantors of CAM, as well as certain related entities.[3] The suit against Jaffe Raitt went forward for a time, but that suit in major part has now settled as well. What remains is to determine the effect of the CAM settlement on the Jaffe Raitt suit.

### III.

A) The County's suit against Jaffe Raitt is styled in four counts:

2. Joel J. Morris, the Jaffe Raitt partner primarily involved in the transaction, was named as an individual defendant in the suit.

3. The "Amurcon entities" included Amurcon, corporate general partner of CAM Partners Limited Partnership and guarantor of the design/build contract for the Bethesda Metro Development Project; Fred Erb and Bert Berman, co-owners of Amurcon; and Amurcon Realty Corporation, owned by Berman and the putative assignee of Amurcon.

4. Among other things, the Court's predecessor in this case (Smalkin, J.) proposed to certify to the Maryland Court of Appeals two issues, one of

Count I—"Breach of Contract/Third Party Beneficiary";

Count II—"Negligence/Professional Malpractice";

Count III—"Negligent Misrepresentation"; and

Count IV—"Fraud, Deceit and Concealment."

However framed, the gist of the Complaint is that, by reason of alleged multiple misstatements by Jaffe Raitt in their opinion letter of July 10, 1987, the County has a right of recovery apart from any rights it might have had against the law firm's clients.

The County's suit was timely removed to federal court. After initially answering in this Court, Jaffe Raitt filed a Motion for Leave to Amend its answer in order to assert, as a Seventh Affirmative Defense, that it had a right of contribution against Amurcon and related parties as "joint tortfeasors in the event those entities might be found liable to the County." The County resists this defense as a matter of law.

Following a somewhat tortuous procedural history,[4] the parties have made their two remaining disputed issues the subject of cross-motions for summary judgment. The Court now turns to those issues.

### IV.

*Is Plaintiff entitled to maintain a malpractice claim asserted in Count I of the Complaint; and if so, is a contribution credit available with respect to that claim?*

A) The irreducible fact in this case is that the County seeks recovery as a third party against attorneys who rendered an opinion

which was whether "the recipient of the opinion letter (is) a third party beneficiary of the attorney-client relationship within the rule of *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985). The Court of Appeals, however, concluded that the questions certified did not present "a question of law of this State which might be determinative of the cause then pending in the certifying court" within the contemplation of Section 12–601 of the Courts and Judicial Proceedings Article, and declined to provide an answer. *See Montgomery County v. Jaffe, Raitt, Heuer & Weiss,* 328 Md. 460, 615 A.2d 261 (1992). The issue thus remains one for this Court to decide.

on behalf of a client. While the County unquestionably had no direct contractual relationship with the attorneys, it argues that its action in Count I is essentially contractual in nature, more specifically that it has rights as a third party beneficiary of the contract. Jaffe Raitt disputes that the County has any claim against it, but says if it does, the claim is one in tort, perhaps for negligent misrepresentation, but not at bottom one in contract. Alternatively Jaffe Raitt says even if an action in contract technically lies, it is a claim in which elements of tort predominate.

Leaving aside for the moment the ultimately metaphysical question of whether a legal malpractice claim is more contract than tort or vice-versa, it is clear that a nonclient may bring an action for malpractice against the attorney for another party in Maryland where it can be shown that "the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship" with the attorney. *See Flaherty v. Weinberg,* 303 Md. 116, 130, 492 A.2d 618 (1985). As in other cases holding attorneys liable to nonclients in connection with the rendering of opinion letters, there can be little doubt that the County was the intended third party beneficiary of Jaffe Raitt's agreement with CAM calling for the law firm to render and deliver the opinion letter of July 10, 1987. *Accord, e.g., Stock West Corp. v. Taylor,* 942 F.2d 655 (9th Cir.1991); *Vanguard Production Inc. v. Martin,* 894 F.2d 375 (10th Cir.1990); *Greycas, Inc. v. Proud,* 826 F.2d 1560 (7th Cir.1987); *Prudential Insurance Co. v. Dewey Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992); *Roberts v. Ball, Hunt, Hart, Brown and Baerwitz,* 57 Cal. App.3d 104, 128 Cal.Rptr. 901 (1976). Little more need be said as to the County's right to be in Court. On one theory or another, it has that right.

On the larger issue—Is its claim in contract or is it in tort?—both sides cite scripture for their purpose. Most assuredly third party beneficiary theory is suggestive of con-

tract, while at the same time any cause of action reciting duty, breach, proximate cause and damage, also "smacks[s] of negligence." *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 706, 255 A.2d 359 (1969). But any effort to sort out the fundamental nature of the action is futile and resolves none of the issues at hand.

Untidy as it may seem, a legal malpractice claim is always at once both contract and tort. As the Maryland Court of Special Appeals stated in *Baker, Watts and Co. v. Miles & Stockbridge,* 95 Md.App. 145, 620 A.2d 356 (1993), apparently unperturbed by this Ying and Yang of the common law universe, "(t)he Court of Appeals has classified an action for attorney malpractice as one in contract, but has also recognized that the gravamen of the claim is for the negligent breach of a contractual duty." *Id.,* 95 Md. App. at 189, n. 11, 620 A.2d 356.[5] Without dwelling more upon the enigma, the Court accepts that a malpractice action is sufficiently tortious in nature to permit a potential contribution credit against joint tortfeasors. *Cf. Loh v. Safeway Stores, Inc.,* 47 Md.App. at 121, 422 A.2d 16 ("For the purposes of the Uniform Contribution Among Tortfeasors Act, we conclude that appellant's suit for breach of implied warranty can be a 'claim in tort' which allows appellant to claim the role of an injured person under the Act"); *see also Uppgren v. Executive Aviation Services, Inc.,* 326 F.Supp. 709 (D.Md.1971).

B) It follows that, unless otherwise precluded, Jaffe Raitt has a right under Maryland's Uniform Contribution Among Tortfeasors Act (UCATA) to a contribution credit based on payments made by joint tortfeasors. *See Md.Code* (1957, 1994 Repl.Vol.), Art. 50, Section 19.

## V.

*May Jaffe, Raitt obtain a pro rata contribution credit against a judgment for the County without having joined as parties in*

---

5. In an analogous circumstance, the Court of Special Appeals described the confluence of sources in somewhat less delicate language:

Suit on implied warranty has been called a 'freak hybrid born of the illicit intercourse of tort and contract.' (Footnote omitted) *Loh v. Safeway Stores, Inc.,* 47 Md.App. 110, 119, 422 A.2d 16 (1980).

*this case alleged joint tortfeasors who have previously settled with the County pursuant to the CAM settlement agreement?*

The County cites a number of reasons why Jaffe Raitt cannot obtain contribution credit from third parties in this action: (1) The County's settlement agreement with the Amurcon entities requires a judicial determination that they are joint tortfeasors; (2) The liability of the Amurcon entities for contribution as joint tortfeasors cannot be adjudicated because they are not before the Court; (3) Jaffe Raitt has waived the right to seek contribution from third parties because it could have asserted a contribution claim against them by means of a third party complaint and didn't; and (4) Contribution is not assertible as an affirmative defense.

Jaffe Raitt agrees that the County's settlement with the Amurcon entities requires a judicial determination that they are joint tortfeasors, but contends that a determination of whether it is entitled to a contribution credit for Amurcon's settlement does not require the presence of those entities before the Court. Indeed, Jaffe Raitt says, it is unable to implead the Amurcon entities into this suit and therefore in no sense has it waived its right to seek the credit. Finally Jaffe Raitt argues that the only way its claim to a contribution credit can be asserted is by way of affirmative defense in this proceeding.

■ First and foremost, although the parties expend considerable effort debating whether a third party could or should have been impleaded according to Maryland state law, the matter of impleader is regulated entirely by federal law. Rule 14 of the Federal Rules of Civil Procedure deals with third party practice in federal court. Where an issue is directly covered by the Federal Rules, federal law controls under the Supremacy Clause (Article 6, Clause 2) and a state's disposition upon the matter is immaterial. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *See also Wandrey v. McCarthy*, 804 F.Supp. 1384, 1387 (D.Kan.1992); *Riordan v. W.J. Bremer, Inc.*, 466 F.Supp. 411, 417 (S.D.Ga.1979); *Yanick v. Pa.R. Co.*, 192 F.Supp. 368, 370 (E.D.N.Y.1961).

As Professor Wright points out, however:

Impleader is proper only where there is a substantive right to the relief sought. In diversity actions the law of the state governs on the existence of such substantive rights, and if, for example, the state recognizes no substantive right to contribution in particular circumstances, impleader for contribution cannot be allowed in federal court. (Footnotes omitted)

Wright, *Law of Federal Courts* (5th Ed.1994), p. 550; *see also Goldlawr, Inc. v. Shubert*, 276 F.2d 614 (3rd Cir.1960); *McCormick v. Mays*, 124 F.R.D. 164 (S.D.Ohio 1988).

■ Reflection satisfies that Jaffe Raitt has the better argument. Under Maryland law, it is obvious that the release executed by the Amurcon parties extinguished any right Jaffe Raitt may have had to contribution. Thus Section 20 of the UCATA provides as follows:

Section 20. Effect of release on right of contribution.

A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

*Md.Code*, Article 50, Section 20.

Both of the prerequisite conditions of this section are met here. First the CAM release preceded Jaffe Raitt's right to secure a money judgment for contribution, since that right will accrue only when Jaffe Raitt discharges its liability, if any, to the County or pays more than its pro rata share of same. *See Md.Code*, Art. 50, Section 17(b).

As for the provision for a pro rata reduction in favor of all other tortfeasors, paragraph 6 of the CAM release reads as follows:

6. Nothing in this Agreement is intended or shall be construed to release or bar any liability, claims, demands, rights, damages, debts, responsibilities, actions or causes of

action which the County has or may have in the future against any other alleged tortfeasors or any other persons or entities not specifically named herein and released hereby, but shall serve only to reduce any recovery which may be had against the other alleged tortfeasors or other persons or entities to the extent of the pro rata share recoverable by law from the releasees in accordance with the provisions of the Uniform Contribution Among Joint Tortfeasors Act of Maryland, Md.Ann. Code art. 50, Section 16 *et seq.* (1957). *Any reduction effected hereby shall not be construed to affect the recovery in any suit, cause of action or claim in which the releasees shall not have been adjudged legally liable for contribution.* (Emphasis supplied)

This language indisputably authorizes that a credit may be granted. All that is required is that the releasee be adjudged legally liable for contribution, *i.e.* that its status as joint tortfeasor be determined. In sum, the statutory terms imposing a bar against contribution have been met. Jaffe Raitt has no right of contribution against the Amurcon parties under the law of Maryland; accordingly, under Fed.R.Civ.P. 14, it could not have impleaded them into this action.

The County's case is not helped by the argument that the status of the Amurcon entities as joint tortfeasors can only be established if they are made parties to this suit. The short answer is that ample authority runs directly counter to this proposition. Simply put, the Amurcon entities are not persons whose joinder is needed for just adjudication under Federal Rule of Civil Procedure 19. *See e.g. Stefano v. Smith,* 705 F.Supp. 733, 737–38 (D.Conn.1989); *Nelson v. Bennett,* 662 F.Supp. 1324, 1334 (E.D.Cal. 1987); *Sabre Shipping Corp. v. American President Lines, Ltd.,* 298 F.Supp. 1339, 1346 (S.D.N.Y.1969). The basic policies underlying these holdings are obvious and compelling. Settling parties have bought their peace once; they should not be required to defend the same claims thereafter. Moreover, the real parties in interest are the plaintiff and the non-settling tortfeasor; the settling tortfeasor has become merely incidental to that suit. Indeed, the non-settling party's presence in the suit can work great prejudice to the non-settling party. *See e.g. Meleo v. Rochester Gas & Elec. Co.,* 72 A.D.2d 83, 423 N.Y.S.2d 343 (1979). In *Meleo,* the Appellate Division reversed the trial court's decision to allow settling parties the right to participate in the trial of plaintiffs' unresolved claims against the settling party in the same manner and to the same extent as if the settling defendants were still interested in the action. Said the Court:

> Because after a settlement ... the true adversaries in the trial become the plaintiff and the nonsettling defendant, the presence of the settling defendants for even a limited participation in the trial against the nonsettling defendant would seem to be totally unwarranted. Here, however, the participation of the settling defendants was anything but limited. Permitting the defendants to participate fully made the trial appear to be one against all the defendants when, in truth, it was a lawsuit by the plaintiffs against only one—[the nonsettling defendant].

The jurors must inevitably have assumed that the plaintiffs and all the "defendants" were adversaries. They would necessarily have expected plaintiffs to put in their strongest case against all the defendants and have concluded, when plaintiffs put in a case only against [the nonsettling defendant], that there was no evidence to be offered against the others. But [the nonsettling defendant] could not explain the reason. It could not reveal that plaintiffs had settled with four defendants ... and that as a result plaintiffs and the settling defendants were not only not adversaries (as they appeared) but were actually allies in pursuing the same end: a verdict against [the nonsettling defendant]. The case (by the ground rules established) had to be presented as something it was not—a case where plaintiffs had extant claims against all five defendants. The very format for the trial as framed by the court pitted [the nonsettling defendant] alone against the combined forces of the plaintiffs and [the nonsettling defendants's] four codefendants. At the same time, it prevented [the nonsettling defendant] from

making its strongest argument: that the plaintiffs and the four settling defendants were not in fact adversaries, as they seemed to be, but were united in their interests against [the nonsettling defendant]. Thus, the jury could not scrutinize the evidence in the light of the true self-interest and interrelationships of the parties. Furthermore, as a result of the court's ruling that the settling defendants would have full participation, the jurors were exposed to openings, examinations, cross-examinations, and summations by separate attorneys representing the Meleos as plaintiffs and as defendants as well as by attorneys for [settling defendants]—all of whom were actively and aggressively advocating a verdict for the Meleo plaintiffs against [the nonsettling defendant] while appearing, ostensibly at least, to be adversaries to the plaintiffs. With the deck thus stacked, the outcome could not have been in doubt. (Footnote omitted)

423 N.Y.S.2d at 352–353.

At the same time, it is certain that proceeding by affirmative defense was the proper method for Jaffe Raitt to assert its right to a pro rata credit and reduction as against the County. As the Delaware Superior Court observed in *Farrall v. A.C. & S. Co., Inc.,* 586 A.2d 662 (Del.Super.1990), "(w)hat is sought here is not a contribution from a joint tortfeasor but a reduction of plaintiffs' claims." *Id.* at 666. Indeed, with Jaffe Raitt unable to implead the American parties, the only way in which it could raise the issue of credit would be by affirmative defense. The United States District Court for the Southern District of New York, in *Quintel Corp. N.V. v. Citibank, N.A.,* 1983 WL 2157 (S.D.N.Y.1983) (slip. op.), agreed:

Alperstein's [the non-settling defendant's] *appropriate relief is the assertion of an affirmative defense* under which he may receive his alleged share of the benefit of the ... settlement.... Flag Associates [a settling defendant] remains out of the case; it need not, indeed *it cannot,* defend.... The trial will proceed with [plaintiff] seeking to establish that Alperstein bears a major share of liability and with Alperstein defending by seeking to establish the ma-

jor portion of the damage resulted from the acts of [other defendants].

\*   \*   \*   \*   \*   \*

Therefore, as to the federal cause, the same procedures will be adopted as has [sic] been already described with respect to the state claims. Alperstein *may not assert his claim for contribution against* Flag Associates; *he may, however, assert an affirmative defense to secure his alleged share of the benefit of the settlement.* (Citations omitted; emphasis supplied)

*Id.* at 3–4.

Finally, the County's stance in this case occasions a general perspective that cannot go unremarked. Allowing that the County may have sustained damages as a result of its engagement with CAM, its limited partners, and its legal counsel, the damages the County sustained were all of piece: No particular item of damage is ascribable to any particular act of Jaffe Raitt, as opposed to CAM or the others. Yet despite the fact that $800,000 has been paid toward that claim by some of the wrongdoers, the County seeks to deny others any credit for it. The net result of accepting the County's argument would be to reward it with double recovery. Equity cannot countenance such an outcome; the law fortunately does not.

The Court will deny the Motion for Summary Judgment filed by the County and grant that of Jaffe Raitt.

A separate Order will be entered implementing this decision.

### FINAL ORDER

Upon consideration of the Cross–Motions of the parties for Summary Judgment, the respective memoranda in support thereof, and the entire record herein, it is this 25th day of August, 1995

ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED; and it is further

ORDERED that Plaintiff's Motion for Summary Judgment is hereby DENIED; and it is further

ORDERED that Defendants are entitled to a joint tortfeasor contribution credit with

respect to the contract claim asserted in Count 1 of the Complaint; and it is further

ORDERED that Defendants are entitled to a pro rata contribution credit against a judgment for the County without having joined the alleged joint tortfeasors as parties in this case; and it is further

ORDERED that this case is hereby DISMISSED.